IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN CURTICIAN, | ) | |
| Plaintiff, | ) | C.A. No. 07-286 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Cohill |
| UNIT MANAGER KESSLER, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment [ECF No. 73] be granted in part and denied in part.

### II. REPORT

#### A. Relevant Procedural and Factual History

On October 17, 2007, Plaintiff Steven Curtician, a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Originally named as Defendants were: Unit Manager Kessler ("Kessler"); Marilyn Brooks, former Superintendent at SCI-Albion ("Brooks"); SCI-Albion's Certified Emergency Response Team ("CERT"); and Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("Beard"). In his complaint, Plaintiff alleges that Defendants violated his Eighth Amendment rights and retaliated against him for filing grievances and inmate requests by placing undesirable and "irresponsible" inmates in his cell "with the element of intent to specifically harm" him. (ECF No. 3, Complaint, at ¶¶ 2C, 4, 6, 7, 9, 14-16). Plaintiff also claims that Defendants retaliated against him for exercising his constitutional right to file grievances and inmate requests by (i) dismissing all of his grievances out of hand, (ii) conducting "investigations and illegal cell searches," and (iii) "moving [him] from block to block and cell to cell as a deterrent to filing grievances." (Id. at ¶¶ 8B, 17, 18).

On June 24, 2008, Plaintiff filed an amended complaint adding as Defendants Lt. William McConnell ("McConnell"), a corrections officer at SCI-Albion, and Patty McKissock ("McKissock"), a Hearing Examiner at SCI-Albion. [ECF No. 25]. Among the claims raised in his amended complaint is a retaliation claim against Defendant McConnell challenging an allegedly false misconduct he issued against Plaintiff for making threats. On September 19, 2008, Plaintiff filed a second amended complaint against all Defendants [ECF No. 39], expanding upon his retaliation and Eighth Amendment claims.

On October 10, 2008, Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 41], seeking dismissal of all claims against them. In response, Plaintiff filed a supplement to his complaint, indicating that, on October 27, 2008, "after being given a direct order to move in with inmate Stiefel, who was used to intimidate the plaintiff in '07 on B-B unit where Kessler was the unit manager and was in charge of the care, custody and control of these two inmates, plaintiff suffered a broken jaw at the hands of inmate Stiefel that required a surgery and a titanium plate to reconstruct." (ECF No. 51 at ¶ 13). This allegation was accepted by this Court as a supplement to Plaintiff's Eight Amendment failure to protect claim against Defendant Kessler.

On June 1, 2009, this Court issued a Report and Recommendation that Defendants' motion to dismiss be granted with regard to all claims, other than (i) Plaintiff's Eighth Amendment failure to protect claim against Defendant Kessler regarding Plaintiff's placement in inmate Stiefel's cell, and (ii) Plaintiff's retaliation claims against Defendants Kessler and McConnell. [ECF No. 54]. This Court's Report and Recommendation was adopted by Memorandum Order of District Judge Maurice B. Cohill, dated August 7, 2009. [ECF No. 59]. As a result, all of Plaintiff's claims against Defendants Beard, Brooks, CERT and McKissock have been dismissed, and Plaintiff's official capacity claims against remaining Defendants Kessler and McConnell have also been dismissed.

The only claims remaining in this case are:

1. Plaintiff's Eighth Amendment failure to protect claim against Defendant Kessler regarding Plaintiff's placement in inmate Stiefel's cell;

2. Plaintiff's retaliation claims against Defendant Kessler[1] for:

    a. dismissing all of his grievances out of hand;

    b. conducting investigations and illegal cell searches; and

    c. moving him from block to block and cell to cell as a deterrent to filing grievances, and placing him with inmates who he deems undesirable and/or a danger to his safety ; and

3. Plaintiff's retaliation claim against Defendant McConnell for issuing an allegedly false misconduct against him.

The parties have since completed discovery, and Defendants Kessler and McConnell have now filed a motion for summary judgment seeking the entry of judgment in their favor on Plaintiff's remaining claims, as a matter of law. [ECF No. 73]. Plaintiff has filed two briefs in opposition to Defendants' motion, along with several exhibits in support. [ECF Nos. 79-81]. This matter is now ripe for consideration.

**B.** **Standards of Review**

**1.** **Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the

---

[1] These retaliation claims were raised in Plaintiff's original complaint against the Defendants named therein, which included Defendant Kessler, but not Defendant McConnell, who was later added as a Defendant in Plaintiff's amended complaint. As a result, these claims are construed as being solely against Defendant Kessler, the only remaining original Defendant.

3

mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for

4

summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Eighth Amendment Failure to Protect Claim

To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm;

(2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer v. Brennan, 511 U.S. 825, 834-37 (1994).

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997). "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." Jones v. Day, 2007 WL 30195 at *4 (W.D.Pa. Jan. 4, 2007). For instance:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43 (citations omitted).

"Thus, in order to survive defendant's summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Jones at * 4, quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). "It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that 'the defendant must have recognized the excessive risk and ignored it.'" Jones at *4, quoting Beers-Capitol, 256 F.3d at 138. Nonetheless, "Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that *this* particular inmate was in danger of attack: 'it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001), quoting Farmer, 511 U.S. at 843.

Here, Plaintiff contends that Defendant Kessler failed to protect him because she placed him in a cell with inmate Stiefel, a prior cellmate of Plaintiff's who is described in the complaint as a "mentally disturbed inmate,... who is intimidating in physical size and was removed from his prior cells as being a threat to his other cell mates." (ECF No. 3, Complaint, at ¶ 6). Plaintiff alleges that "Stiefel i[s] known to pose a threat to his prior cellmates and is in fact supposed to be z-coded. His refusal to take his psychiatric medication is the reason this staff ha[s] lifted his z-code status and placed others in danger of an irreparable harm of this inmate by placing them in a cell with him." (ECF No. 51, Supplement to Complaint, at ¶ 13).

In response, Defendants have submitted Defendant Kessler's Declaration, in which she avers that "I had no idea or no information that there were any particular or specific problems between [Plaintiff] and Inmate Stiefel that would have led me to conclude that Stiefel would punch Plaintiff. The only thing I knew on that date was that both inmates were difficult to house and both inmates had problems with everybody in general." (ECF No. 76-1, Defendant Kessler's Declaration, at ¶ 16). Yet, the record discloses that Defendant Kessler was familiar with the past behavior of both Plaintiff and inmate Stiefel by virtue of her previous assignment as unit manager of their cellblock. (Document # 46 at ¶¶ 11-12; Document # 51 at ¶ 13). During a telephone hearing before this Court on December 12, 2008, Defendant Kessler acknowledged that both Plaintiff and Stiefel were difficult inmates who had previously been celled together and didn't get along with each other. (ECF No. 56 at p. 9). In fact, Defendants note in their brief that, during the investigation of the assault of October 27, 2008, Plaintiff explained what happened on Defendant Kessler's unit the previous time he and inmate Stiefel were celled together:

> This guy [Stiefel] was suppose[d] to be Z-coded and he won't take his meds so they keep celling guys with him. He told me about the Z-code. I tried to work with him but he would go crazy and start yelling at himself in the mirror. **I told him he couldn't be acting like that because I didn't know what I would do to him. Then Stiefel went and talked to [Kessler], that's why she moved him out.**

(ECF No. 74, Defendants' Brief, at p. 23)(emphasis in original).

7

Defendants quote this statement to show that, "if anything, it was Plaintiff who presented a threat to Stiefel not the other way around;" however, the statement shows, more importantly, that Defendant Kessler had actual knowledge of the previous conflict between Plaintiff and inmate Stiefel and had taken affirmative action to separate them only a year prior to the assault at issue. Furthermore, she had actual knowledge of Plaintiff's previously stated safety concerns regarding his placement with Stiefel in 2007, as set forth in the original Complaint in this matter. (ECF No. 3, Complaint, at ¶ 6). In addition, Plaintiff previously submitted of record in this case the Declaration of Keith A. Messner, a fellow inmate at SCI-Albion, who declares that, on the morning of October 27, 2008, he heard inmate Stiefel "telling one of the block officers [in Defendant Kessler's unit] that he was not going to allow them to put another inmate in the cell with him and that if they do, he would 'fuck-up' whoever they put in his cell." (ECF No. 46-1, Declaration of Keith A. Messner, at ¶ 1).

Despite the foregoing, on October 27, 2008, Defendant Kessler assigned Plaintiff to the same housing unit as Stiefel and then, according to her, "pondered out loud whether [she] should put [Plaintiff] in [a cell] with Stiefel." (ECF No. 76-1, Defendant Kessler's Declaration, at ¶ 21). Apparently in reaction to Defendant Kessler's loud "pondering," Plaintiff was assigned by a corrections officer to Stiefel's cell, an arrangement that immediately resulted in Stiefel's assault upon Plaintiff that left Plaintiff with a broken jaw that required surgical reconstruction supported by a titanium plate in his chin. (Document # 46 at ¶¶ 6-10; Document # 51 at ¶ 13). Thus, at the very least, the evidence indicates that Defendant Kessler took a course of action that resulted in Plaintiff's placement in inmate Stiefel's cell on the day of the assault at issue.

Based on the foregoing, this Court finds that there is sufficient evidence of record to support the inference that Defendant Kessler "knowingly and unreasonably disregarded an objectively intolerable risk of harm," when she caused Plaintiff to be placed in inmate Stiefel's cell on October 27, 2008. <u>Beers-Capitol</u>, 256 F.3d at 132. Accordingly, Defendants' motion for summary judgment with regard to Plaintiff's Eighth Amendment claim against Defendant

8

Kessler should be denied.

### 2. Retaliation

Retaliation for the exercise of one's constitutional rights is a separate matter, requiring a distinct legal analysis. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials[2]; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[3]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden

---

[2] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[3] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that Defendant Kessler retaliated against him for filing numerous grievances, requests to staff, and complaints by: (i) dismissing all of his grievances out of hand; (ii) conducting "investigations and illegal cell searches;" (iii) "moving [him] from block to block and cell to cell as a deterrent to filing grievances;" and (iv) placing him with inmates who he deems undesirable and/or a danger to his safety. In addition, Plaintiff claims that Defendant McConnell retaliated against him by issuing an allegedly false misconduct against him.

At the outset, Defendants concede that Plaintiff has met the first prong of a retaliation claim, as filing grievances, requests to staff, and complaints are clearly protected forms of free speech under the First Amendment. However, Defendants argue that, with regard to each retaliation claim, Plaintiff cannot satisfy the second or third prongs of the retaliation test. Thus, each of Plaintiff's claims will be addressed in turn.

### a.     Dismissing Grievances "Out of Hand"

In response to Plaintiff's claim that Defendant Kessler retaliated against him by denying his grievances "out of hand," Defendants have produced a list of the forty-three (43) grievances Plaintiff filed while at SCI-Albion (ECF No. 76-1 at pp. 15-19), followed by copies of sixty-

seven (67) pages of documents Plaintiff received in response (Id. at pp. 20-82, 84-85, 87-88). These documents establish that Defendant Kessler responded to and denied only two of Plaintiff's grievances, both having to do with Plaintiff's custody level. (Id. at pp. 84-85, 87-88). Both of these responses were explanatory and appropriate; not dismissive, as Plaintiff suggests. Furthermore, as Defendants correctly point out, courts have held that the denial of grievances is not an "adverse action" for retaliation purposes. See Burgos v. Canino, 641 F.Supp.2d 443, 455 (E.D.Pa. 2009)("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"); Alexander v. Forr, 2006 WL 2796412, at * 9 (M.D.Pa. Sept. 27, 2006)(same); Crenshaw v. Herbert, 445 F.Supp.2d 301, 303 n. 1 (W.D.N.Y. 2006)(denial of grievances not adverse action).

Based on the foregoing, Plaintiff has failed to demonstrate that he suffered an adverse action due to Defendant Kessler's denial of his grievances and, thus, summary judgment should be entered in favor of Defendant Kessler with regard to this claim.

### b. Conducting "Investigations and Illegal Cell Searches"

Plaintiff's retaliation claim challenging "investigations and illegal cell searches" arises from a single cell search that occurred on July 26, 2007, during which a request slip was confiscated for a handwriting sample. (See ECF No. 18-1, grievance and response regarding cell search). Plaintiff complains that the search violated his privacy interests and was conducted outside of his presence. (Id. at p. 1). The response to Plaintiff's grievance in this regard indicates that the confiscated request slip was returned to Plaintiff after the handwriting analysis absolved Plaintiff of any involvement in the incident being investigated. (Id. at p. 3). Thus, no adverse consequences arose from the cell search at issue. Moreover, courts have consistently held that a cell search is not an "adverse action for retaliation purposes. See, e.g., Brooks v. Smith, 2007 WL 3275266, at * 2 (M.D.Pa. Nov. 6, 2007)(finding that "retaliation claim premised on pat searches and cell searches ... could not serve as the requisite 'adverse action' to support a

11

retaliation claim"); Lashley v. Wakefield, 367 F.Supp.2d 461, 470 (W.D.N.Y. 2005)("[i]t is well-settled ... that plaintiff cannot base a retaliation claim... based solely on cell searches and summary judgment is warranted"); Salahuddin v. Mead, 2002 WL 1968329, at * 5 (S.D.N.Y. Aug. 26, 2002)(dismissing retaliation claim based on cell searches, finding that plaintiff suffered no adverse action).

Based on the foregoing, Plaintiff has failed to satisfy the second prong of his retaliation claim against Defendant Kessler based upon "investigations and illegal cell searches" and, thus, summary judgment should be entered in favor of Defendant Kessler with regard to such claim.

### iii. Moving Plaintiff From Block to Block and Cell to Cell

First, there is little doubt that moving an inmate from block to block and cell to cell as frequently as Plaintiff has been moved could be found sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Thus, the Court has no difficulty finding that Plaintiff has satisfied the second prong of this retaliation claim.

Second, the record in this case indicates that Plaintiff continually filed numerous requests to staff, grievances, and complaints during the time period in which he claims the adverse actions occurred. Defendants, themselves, have documented that Plaintiff filed 43 grievances while at SCI-Albion, as well as countless inmate requests. (ECF No. 76-1 at pp. 15-19). Thus, Plaintiff has alleged, at least, a temporal proximity between the grievances and inmate requests he filed and his frequent moves "from block to block and cell to cell" to suggest a causal link sufficient to satisfy the third prong of his retaliation claim. See Allah v. Al-Hafeez, 208 F.Supp.2d at 535.

Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged a *prima facie* case of retaliation in this regard. Thus, it is Defendant Kessler's burden to prove "that [she] would have made the same decision[s] absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. This she has done.

In her Declaration, Defendant Kessler explains why Plaintiff's living arrangements

12

continually changed:

> 9. I lost count of the times [Plaintiff's] cellmates came to me complaining about him asking that they be taken out of his cell. [Plaintiff] would bully, harass, threaten, and generally make life miserable for these men. Moreover, [Plaintiff] is a white supremacist who will not stand being celled with anyone other than a white, non-smoking, top bunk eligible (as [Plaintiff] has bottom bunk status), Christian. African-Americans, Hispanics, or Muslims to name just a few are out of the question in [Plaintiff's] mind.
>
> \* \* \*
>
> 12. [Plaintiff] was not moved from cell to cell and block to block out of retaliation for filing grievances/requests to staff. His housing arrangements were in a state of flux because he was ineligible for Z-code status, he refused to name inmates with whom he could live, he would not enter into cell agreements while he was under my care, he bullied, harassed, threatened, and made life miserable for those inmates he did cell with, and is an [sic] self-avowed racist who cannot abide being celled with minorities, non-Christians, smokers, or anyone who has bottom bunk status. As one can plainly see, finding suitable living arrangements for this man is no easy task and it is no wonder his housing arrangements frequently change.

(ECF No. 76-1, Defendant Kessler's Declaration, at ¶¶ 9, 12).

The foregoing statements are supported by Plaintiff's Cumulative Adjustment Records, which contain several entries documenting complaints by Plaintiff's cellmates and/or Plaintiff himself regarding cell living arrangements. (ECF No. 76-1, Cumulative Adjustment Records, at pp. 95-96). In fact, Plaintiff would be hard-pressed to dispute that he was continually moved "from block to block and cell to cell" primarily in reaction to his own inability to accept the inmates with whom he was celled. This is plainly indicated by Plaintiff's own allegations and hearing testimony in this case, as well as the various grievances he filed at SCI-Albion regarding his housing arrangements, all of which clearly depict Plaintiff's racist attitude and continual dissatisfaction with his cellmates. (ECF No. 76-1 at pp. 98-108).

Thus, it is quite evident from the record that Defendant Kessler frequently changed Plaintiff's living arrangements in direct response to complaints she received from Plaintiff and/or his cellmates, for reasons reasonably related to the legitimate penological interest of

13

maintaining prison security. For this reason, summary judgment should be granted in favor of Defendant Kessler with regard to Plaintiff's retaliation claim based on him being moved "from block to block and cell to cell."

### iv. **Placing Plaintiff in Cells with Inmates Who He Deemed Undesirable and/or a Danger to His Safety**

Plaintiff generally claims that he was continually celled with inmates who he deemed undesirable and/or a danger to his safety, in retaliation for his filing of grievances, inmate requests, and/or complaints. As discussed above, however, Plaintiff found every inmate with whom he was celled undesirable and/or a danger to his safety. Yet, with the noted exception of inmate Stiefel, the Court finds that being placed in a cell with the inmates Plaintiff found undesirable would not have been sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Plaintiff's retaliation claim in this regard will be limited to his placement in a cell with inmate Stiefel on October 27, 2008.

There is little doubt that being placed in a cell with inmate Stiefel would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights, especially in light of the assault that ensued. Accordingly, Plaintiff has demonstrated that he suffered an adverse action sufficient to satisfy the second prong of the retaliation test. It is also evident that Plaintiff has met the third prong of the retaliation test, as there is, at least, a suggestive temporal proximity between Plaintiff's filing and prosecution of the instant action against Defendant Kessler and Plaintiff's placement in inmate Stiefel's cell on October 27, 2008. Allah v. Al-Hafeez, 208 F.Supp.2d at 535.

Thus, the burden is on Defendant Kessler to prove that she would have made the same decision to place Plaintiff in inmate Stiefel's cell absent the instant lawsuit for reasons reasonably related to a legitimate penological interest. This she has failed to do, for the reasons discussed at length above with regard to Plaintiff's Eighth Amendment failure to protect claim.

Based on the foregoing, therefore, summary judgment should be granted in favor of

14

Defendant Kessler with regard to Plaintiff's retaliation claim as to his placement in cells with all inmates other than inmate Stiefel; however, Defendant Kessler's motion for summary judgment as to Plaintiff's retaliation claim regarding his placement in inmate Stiefel's cell on October 27, 2008, should be denied.

### v. False Misconduct

Plaintiff's final retaliation claim is against Defendant McConnell for issuing an allegedly "false" misconduct against Plaintiff for making threats. Without conceding that Plaintiff has sufficiently stated a *prima facie* of retaliation, Defendants argue primarily that Defendant McConnell had a legitimate penological reason for issuing the misconduct, regardless of Plaintiff's exercise of his constitutional right to file grievances and complaints.

In particular, on December 20, 2007, Plaintiff sent an inmate request to Raymond Sobina, SCI-Albion's Superintendent, voicing his concerns about having Muslims assigned to his cell. (ECF 76-1 at p. 110). In his request, Plaintiff stated that "[t]he only reason I'm coming to you with this is because I don't want to hurt anyone and most certainly do not want to get hurt myself or worse." (Id.). Defendant McConnell was ordered to investigate the statements contained in Plaintiff's request. (ECF 76-1, Declaration of William B. McConnell, at ¶ 8). As part of the investigation, Defendant McConnell interviewed Plaintiff and reported that Plaintiff "was unrepentant" and "continued with his threats against any non-white/non-Christian inmate placed in his cell." (Id. at ¶ 9). As a result, Defendant McConnell issued a misconduct against Plaintiff for "threatening another person." (Id.; ECF No. 76-1 at p. 111). At the misconduct hearing, the hearing examiner found that Defendant McConnell had established by a preponderance of evidence that Plaintiff "did threaten 'to hurt someone' if he was celled with a black or muslim inmate," and that "[Plaintiff] restate[d] this .. in his [hearing] testimony." As a result, Plaintiff was found guilty of the misconduct and was sanctioned to 60 days of disciplinary custody. (ECF No. 76-1 at p. 113). Subsequently, in response to successive appeals, the

15

Superintendent, the Program Review Committee, and the DOC's Chief Hearing Examiner all agreed that Plaintiff was guilty of making threats. (ECF No. 76-1 at pp. 114-119).

Based on the foregoing, the record evidence clearly establishes that Defendant McConnell had an independent reason for filing the challenged misconduct that was reasonably related to the legitimate penological interests of maintaining inmate safety and prison security. Accordingly, summary judgment should be granted in favor of Defendant McConnell with regard to this claim.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 73] be granted in part and denied in part, as follows:

1. Summary judgment should be GRANTED in favor of Defendant Kessler with regard to Plaintiff's retaliation claims arising from: (i) the dismissal of all of his grievances "out of hand;" (ii) conducting investigations and illegal cell searches; and (iii) moving him from block to block and cell to cell;

2. Summary judgment should be GRANTED in favor of Defendant McConnell with regard to Plaintiff's retaliation claim arising from Defendant McConnell's filing of an allegedly false misconduct against him; and

3. Summary judgment should be DENIED Defendant Kessler with regard to Plaintiff's Eighth Amendment failure to protect claim and his retaliation claim arising from his placement in inmate Stiefel's cell on October 27, 2008.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d

187 (3d Cir. 2007).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        United States Magistrate Judge

Dated: November 29, 2010

cc:    The Honorable Maurice B. Cohill
       United States District Judge