IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STEVEN CURTICIAN, | ) | |
|---|---|---|
| | ) | Civil Action No. 1:07-cv-286 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| UNIT MANAGER KESSLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**CATHY BISSOON, District Judge.**[1]

## I. MEMORANDUM

Presently pending before the Court is the Motion for New Trial (ECF No. 122) filed by Plaintiff, Steven Curtician. For the reasons that follow, the Motion will be denied.

## BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on October 17, 2007, against numerous officials of the Pennsylvania Department of Corrections, claiming that his rights under the First and Eighth Amendments were violated while he was an inmate at the State Correctional Institution ("SCI") at Albion. Named as Defendants were: Unit Manager Rebecca Kessler ("Kessler"); Marilyn Brooks ("Brooks"), former Superintendent at SCI Albion; SCI Albion's Emergency Response Team ("CERT"); and Jeffrey Beard ("Beard"), Secretary of the Pennsylvania Department of Corrections. (ECF No. 3).

---

[1] Following Judge Sean J. McLaughlin's departure from the bench, this case was reassigned to the undersigned on August 27, 2013. (ECF No. 127).

On June 24, 2008, Plaintiff filed an Amended Complaint adding Patty McKissock ("McKissock"), Hearing Examiner at SCI Albion, and Lt. William McConnell ("McConnell"), corrections officer at SCI Albion, as Defendants. (ECF No. 22). Plaintiff asserted retaliation, Eighth Amendment, and/or Fourteenth Amendment due process claims against these Defendants. (ECF No. 22). On September 19, 2008, Plaintiff filed a Second Amended Complaint, asserting further retaliation and Eighth Amendment claims based upon the placement of more inmates in his cell who he deemed undesirable and/or a danger to his safety. (ECF No. 39). Plaintiff supplemented his Second Amended Complaint on January 15, 2009 to include an incident that occurred on October 27, 2008, wherein he suffered a broken jaw at the hands of an inmate named Stiefel, necessitating surgery. (ECF No. 51 at ¶ 13).

Following the disposition of several rounds of motions, *see* (ECF No. 54, 59, 73, 84, 85, 93), the remaining claims that proceeded to trial on September 26, 2011 were: (1) a retaliation claim against McConnell for an alleged false misconduct dated December 21, 2007 based on Plaintiff's December 20, 2007 request to staff form; (2) a retaliation claim against Kessler for grievances filed against her prior to October 27, 2008; and (3) a failure to protect claim against Kessler based upon his placement in Stiefel's cell on October 27, 2008.

At the conclusion of the trial on September 29, 2011, the jury ultimately found in favor of both Defendants. (ECF No. 120). On October 17, 2011, Plaintiff filed a Motion for New Trial. (ECF No. 122). On October 31, 2011, Plaintiff filed a Notice of Appeal. (ECF No. 123). This appeal was dismissed by the Court of Appeals for the Third Circuit on February 7, 2012, due to the Plaintiff's failure to pay the requisite filing fee or file a motion for leave to proceed in forma pauperis. *See Curtician v. Unit Manager Kessler, et al.*, No. 11-4053, in the United States Court

of Appeals for the Third Circuit (Order entered Feb. 7, 2012).[2] Defendants filed a Response to Plaintiff's Motion, (ECF No. 133), and the matter is now ripe for disposition.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 59(a) governs a motion for new trial. According to Rule 59(a), a court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED.R.CIV.P. 59(a)(1). This relief may be sought on the grounds "that the verdict is against the weight of the evidence, that damages are excessive," that the court committed substantial errors of law in the admission or rejection of evidence or instructions to the jury, or that the trial was otherwise not fair to the moving party. *Montgomery Ward & Co., v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). The decision of whether or not to grant a new trial "is committed to the sound discretion of the district court." *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir. 1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986); *see also Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995).

The district court's latitude varies, however, depending on the type of error alleged. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Its latitude "is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially vested within the discretion of the court," such as evidentiary rulings. *Id*. In this regard, "a District Court must first determine whether an error was made, and must then determine 'whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'" *Jackson v. City of Pittsburgh*, 2011 WL 3443951 at *8 (W.D.Pa. 2011) (quoting *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D.Pa. 1989)). The court's discretion is

---

[2] The Court did not receive notice of this Order until recently.

more limited when granting a new trial on the basis that the jury's verdict is against the weight of the evidence; in such cases a new trial should be awarded "only when the record shows that the jury's verdict resulted in a miscarriage of justice or when the verdict, on the record, cries out to be overturned or shocks the conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991); *Moussa v. Comm. of Pa. Dept. of Public Welfare*, 89 F. Supp. 2d 639, 648 (W.D.Pa. 2003).[3]

## ANALYSIS

### *Evidentiary Rulings*

Prior to trial, Defendants filed a Motion in Limine seeking to exclude a number of Plaintiff's proposed exhibits from being introduced as evidence at trial. (ECF No. 111). Here, Plaintiff claims that he was "ambushed" by the filing of the Motion "only a few days before trial" and was forced to "re-write" his case due to the Court's ruling. (ECF No. 122 at 1). The Court finds no error warranting a new trial.

Defendants' Motion was filed on September 20, 2011, and the certificate of service reveals that it was sent to Plaintiff via e-mail for hand delivery to the Superintendents' Assistants at SCI-Albion and SCI-Smithfield for hand delivery to Plaintiff. (ECF No. 111 at 14). Trial in the instant matter did not commence until September 27, 2011, and Plaintiff concedes that he received the Motion prior to trial. (ECF No. 122). In addition, after advising the Court that his opening remarks had been "based mostly" on the evidence excluded by the Court, the Court recessed in order to allow Plaintiff time to refine his opening statement in light of the Court's rulings. (ECF No. 128 at 33-35). The Court advised Plaintiff:

---

[3] Plaintiff did not move for a new trial on the basis that the jury's verdict was against the weight of the evidence. Accordingly, we have not recited a summary of the evidence adduced at trial, except where necessary to resolve Plaintiff's challenges.

4

> …Mr. Curtician, remember again what the three claims are. And the focus is, with respect to two of those claims, with respect to Kessler, the focus is any evidence that tends to prove that shows she was retaliating against you for alleg[edly] placing you with that inmate on the date in question. Secondly, any evidence that you would believe you can introduce that supports your contention that she was aware that there was a substantial risk to you if you were placed with that inmate. Those are the two claims relative to her. Thirdly, your opening statement, and then the evidence that you offer should be on the McConnell claim, limited to your contention that the misconduct report which you were issued and which you subsequently suffered an adverse action … [t]he focus of your evidentiary effort there should be to establish that McConnell was aware of previous grievances, and that was a substantial or motivating factor in why he issued you an allegedly false misconduct. So that's the relatively small universe of claims that has been pared down. …

(ECF No. 128 at 34-35). Following the Court's recess, the Court specifically inquired as to whether Plaintiff was ready to proceed with his opening statement, and Plaintiff responded that he was. *Id*. at 35.

Moreover, to the extent Plaintiff challenges Judge McLaughlin's exclusion of certain evidence, the Court also finds no error. The Court ruled that the following evidence was inadmissible because it was irrelevant to the Plaintiff's three pending claims:[4]

> (1) Exhibit A, consisting of Grievance #199982, which related to an incident in September 2007 when Plaintiff's cellmate, Pehlman, was found with a hand-made "shank;" a traced copy of the "shank;" Declaration from inmate Larkin relating to the Pehlman incident; and Declarations from inmates Huertas and Bartela, concerning an incident where Superintendent Sobina allegedly placed Plaintiff in the restrictive housing unit. (ECF No. 99-1 at 1-14).

> (2) Exhibit B, consisting of Grievance # 256910 against Health Care Administrator Overton in January 2009 regarding his placement into the general population while recovering from his broken jaw; Misconduct marked "Other" #B043649, related to Plaintiff's placement in administrative custody by Superintendent Sobina; transcripts from Plaintiff's preliminary injunction hearing on February 24, 2009; and Grievance #'s 260199 and 268934, against "staff" in February 2009 and April 2009 respectively, alleging retaliation. (ECF No. 99-1 at 15-40).

---

[4] This recitation consists only of the evidence the Court ruled inadmissible. Defendants' Motion sought the exclusion of additional evidence, but the Court either denied the request, and/or or ruled that the evidence could be admitted in a redacted form, and/or reserved ruling until the time of trial. (ECF No. 128 at 3-16).

5

(3) Exhibit D, consisting of a Request to Superintendent Fischer and an Excerpt on Objections filed February 28, 2011, which related to Plaintiff losing his Z-Code status in 2011. (ECF No. 99-2 at 29-31).

(4) Exhibit E, consisting of DC-15 files to be provided at a later date; *Kerwin v. McConnell* newspaper articles; Requests for Documents and Responses; and Letters to Attorney Willig. (ECF No. 99-2 at 48, ECF No. 99-3 at 27-39).

(5) Exhibit F, consisting of Grievance # 249739 dated November 9, 2008 against Kessler alleging retaliation; request slips to Unit Manager Showers and Neppach Grievance # 238744, which concerned an incident regarding a broken sink; and new articles reporting damages awarded in other prisoner cases. (ECF No. 99-5 at 6-11, 21-25).

(ECF No. 128 at 3-16).

The above evidence either related to a claim that was previously dismissed (Exhibit A, Grievance # 199982,[5] the traced copy of the "shank," and the Declaration from inmate Larkin); related to individuals that were not parties to the lawsuit (Exhibit A, Declarations from inmates Huertas and Bartela concerning Superintendent Sobina's actions, Exhibit B, Grievance #256910 against Overton, Misconduct #B043649 concerning Superintendent Sobina's actions, Grievance #'s 260199 and 268934 against "staff,"); related to conduct that post-dated the events at issue in the case (Exhibit D, documents related to Plaintiff's loss of Z-Code status in 2011, Exhibit F, Grievance against Kessler dated November 9, 2008), or related to matters not involved in the instant lawsuit (request slips to Showers and Neppach Grievance # 2387444 concerning a broken sink of another inmate's cell). (ECF No. 128 at 3-16). The Court's rulings on the above evidence did not prevent Plaintiff from introducing evidence relevant to prove the substance of his three remaining claims against McConnell and Kessler. Accordingly, Plaintiff's request for a new trial on this basis is denied.

---

[5] The Court initially ruled prior to trial that Grievance # 199982 against Kessler was not relevant. During trial, however, the Court concluded that this evidence was relevant for the purpose of demonstrating that Kessler retaliated against Plaintiff for previously having filed grievances against her. (ECF No. 129 at 76-78).

6

Plaintiff further claims that a new trial is warranted on the basis of the improper admission of Defendants' Exhibit 2 during trial. (ECF No. 122 at 2). This Exhibit consisted of eleven pages of various Grievances filed by Plaintiff dated from September 21, 2006, through September 8, 2008. (Def. Exh. 2). Again, there was no error in admitting this evidence. As pointed out by Defendants, part of their defense was that Plaintiff was impossible to house given his racist, white separatist views, and that these grievances lent support to this contention. (ECF No. 133 at ¶ 15). Moreover, Plaintiff himself introduced Grievance # 238995 lodged against Kessler during his examination of her during trial, which was part of Defendants' Exhibit 2. (Pl. Exh. O, ECF No. 129 at 95-98).

It also should be noted that Plaintiff's argument is disingenuous. The trial transcript reveals that Plaintiff not only failed to object to the admission of Exhibit 2, but he made the tactical decision *not* to object to its admission. During his closing argument, Plaintiff specifically admitted:

> I even let Mr. Willig enter documents into evidence that I believe would have been inadmissible if I would have objected to them, because they were not directly related to Mr. McConnell's report, they were not directly related to claims against Ms. Kessler. But I admitted these because I don't have anything to hide. I want you to understand that Mr. Willig only put in things there he wanted you to see, he didn't give you the entire grievance, you're only going to have bits and pieces of that. …

(ECF No. 130 at 97). Accordingly, Plaintiff has waived any alleged error in the admission of Exhibit 2 and a new trial is not warranted on this ground.

*Jury Instructions*

Plaintiff argues that the Court's instructions to the jury of the terms "acquiesce" and "preponderance" were "much more difficult to understand than needed." (ECF No. 122 at 1). In reviewing a challenge to a jury charge or interrogatory, the relevant inquiry is whether the charge

7

taken as a whole accurately instructed the jury on the applicable law. *Colegrove v. Cameron Machine Co.*, 172 F. Supp. 2d 611, 634 (W.D.Pa. 2011). "A trial judge is not required to adopt the exact wording of a point for a charge submitted by counsel." *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751, 757 (3d Cir. 1976); *see also James v. Continental Ins. Co.*, 424 F.2d 1064 (3d Cir. 1970). Where the challenged portion of the charge was not objected to during trial, the challenging party must demonstrate "plain error in the [interrogatories] affecting [their] substantial rights." FED.R.CIV.P. 51(d). The plain error doctrine is to be used sparingly and is applied only where (1) an error is committed in the jury instructions or interrogatories, (2) the error is plain or fundamental, and (3) the error was highly prejudicial or resulted in manifest injustice. *See, e.g., Simmons v. City of Philadelphia*, 947 F.2d 1042, 1078 (3d Cir.), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1991).

The Court provided the parties with the proposed charge, as well as the proposed verdict form, prior to instructing the jury. (ECF No. 130 at 3). The Court instructed the parties that it was "inviting" any requests for additions, deletions or objections, at that time. *Id*. at 3. Plaintiff informed the Court that "[e]verything is fine, your Honor." *Id*. at 3. The Court instructed the jury that the Plaintiff had the burden of proving his claims against the Defendants by a preponderance of the evidence. Specifically, the jury was instructed:

> The first matter about which I will instruct you is the applicable burden of proof. The burden of proof is a concept which you must understand in order to give the case proper consideration because a verdict cannot be based on speculation, guess or conjecture. In civil cases such as this one, the Plaintiff has the burden of proving those contentions that entitle him to relief by a preponderance of the evidence.
> The fair weight or preponderance of the evidence means evidence which has more convincing force when it is weighed against the evidence opposed to it so that the greater probability of truth lies therein. If we visualize evidence as something weighed on an ordinary balance scale, and if the evidence admitted in support of a claim made by the party having the burden of proof is more weighty in probative value than the evidence offered in opposition so that it tips the scales

8

on the side of that party, then that party has proved the claim by the fair weight or preponderance of the evidence.

       If, on the other hand, the evidence admitted in opposition to the claim of the party having the burden of proof outweighs or equally balances the evidence produced in support of the claim, it can be said that there has been a failure to carry the burden of proof imposed by law.

       It is important to note here that we speak of the quality of evidence, not necessarily its quantity. Also, all of the evidence admitted in support of, and in opposition to, a claim must be considered, and not just the evidence offered by the party having the burden of proof. In short, the test is not which side brings the greater number of witnesses or presents the greater quantity of evidence, but which witness or witnesses and which evidence you consider most worthy of belief. Even the testimony of one witness may outweigh that of many, if you have reason to believe his or her testimony in preference to their testimony.

(ECF No. 116 at 2-3). With respect to the Plaintiff's retaliation claim asserted against Defendant Kessler, the Court instructed the jury as follows:

       Plaintiff next claims that Defendant Kessler retaliated against him by placing him or acquiescing in his placement in a cell with inmate Stiefel on October 27, 2008 because he had filed grievances against her prior to that date. With respect to this claim, it is undisputed that the Plaintiff engaged in protected conduct. Therefore, as to this claim, you will decide whether Defendant Kessler placed or acquiesced in the placement of the Plaintiff in a cell with inmate Stiefel, and if so, whether the Plaintiff's protected conduct was a substantial or motivating factor in Defendant Kessler's placement or acquiescence in the placement of the Plaintiff in Stiefel's cell. …

(ECF. No. 116 at 5-6). The term "acquiesce" was not specifically defined in the Court's initial instructions to the jury.

During deliberations, the jury submitted several questions to the Court. (ECF No. 119). The Court conferred with Plaintiff and counsel for Defendants with respect to the questions, as well as an appropriate response:

       THE COURT: I received the following questions. It's not signed, I presume it was perhaps drafted by the jury foreperson. It says "judge, could you please describe for us how we should consider 'acquiesce' in this case? As in, to what extent can a person be held responsible for acquiescing in something." First question. Second question. "Could you please further define 'preponderance' for us?" Third question, "at what point is there a hung jury?"

9

Now, on the subject of acquiesce, that term occurs, as you know, in the charge, obviously, they're looking for some definition. Let me first – Mr. Willig, for your consideration, I am looking at the instructions under Section 1983, 4.6.1 of the model Third Circuit instructions. Liability in connection with the actions of another, supervisory officials. They define, let me read the section on acquiesce and see if you are in agreement with this. I'll read the whole thing. "To 'acquiesce' in a violation means to give assent to the violation. Acquiescence does not require a statement of assent, out loud. Acquiescence can occur through silent acceptance. If you find that [supervisor]," in this case Kessler, "if you find that Kessler had authority of [subordinate] and that Kessler actually knew that [subordinate] was violating plaintiff's rights but failed to stop [subordinate] from doing so, you may infer that Kessler acquiesced in the [subordinate's] conduct." That's a direct quote from the model charge. Are you all right with that?

MR. WILLIG: I was going to offer that, your Honor. What the Third Circuit says, that sounds good to me.

THE COURT: Is that all right with you?

MR. CURTICIAN: Yes, sir.

THE COURT: That takes care of that. I'm going to simply recharge them from my charge on preponderance of the evidence. And as to what point is there a hung jury, I'm going to tell them that the jury is hung when it's hopelessly deadlocked. They've only been deliberating on this case a number of hours and this isn't anywhere near the time to be talking about a hopelessly deadlocked jury, is that acceptable?

MR. WILLIG: Yes, sir.

THE COURT: Is that acceptable to you?

MR. CURTICIAN: Yes, sir.

(ECF No. 131 at 2-3).

Thereafter, the Court further instructed the jury as follows:

THE COURT: Good Morning, members of the jury, you can be seated. You've given me some questions. I'm going to try to answer them for you now. The first question "could you please describe for us how we should consider 'acquiesce' in this case. And to what extent can a person be held responsible for acquiescing in something." Well, the answer would be this. "To acquiesce in a violation means to give assent to the violation. Acquiescence does not require a statement of assent, out loud. Acquiescence can occur through silent acceptance. If you find that Kessler had authority over a subordinate and that Kessler actually

10

> knew that subordinate was violating plaintiff's rights but failed to stop the subordinate from doing so, you m[a]y infer that Kessler acquiesced in the subordinate's conduct." That's the definition of acquiesce or acquiescence.
>
> The second question is "could you please further define preponderance for us?" …
>
> As I told you in my instructions, the plaintiff has the burden of proving those contentions that entitle him to relief by a preponderance of the evidence. The fair weight or preponderance of the evidence means, evidence which has more convincing force when it is weighed against the evidence opposed to it, so that the greater probability of truth lies therein. Now, if we were to visualize evidence as something weighed on a balance scale, an ordinary balance scale, if the evidence admitted in support of a claim made by the party having the burden of proof is more weighty in probative value than the evidence offered in opposition, so that it tips the scale on the side of that party, like that (indicating), then that party has proved the claim by a fair weight of the preponderance of the evidence. If, on the other hand, the evidence admitted in opposition to the claim that a party having the burden of proof – let me say that again. If on the other hand the evidence admitted in opposition to the claim of a party having the burden of proof outweighs or equally balances the evidence produced in support of the claim, it can be said there has been a failure to carry the burden of proof imposed by law. Basically, what I just told you means if in order for the party who has the burden of proof to prevail, they have to make the scale tip a little bit in their favor. If the scale doesn't move at all and is equally balanced between their position and the other party's position, the party bearing the burden doesn't win. Just like the party bearing the burden of proof doesn't win if the party opposed to its evidence is a little higher. So they lost if it's balanced, if it's perfectly equal, and they lose if the party bearing the burden of proof doesn't move their evidence up a little bit. I hope that is somewhat clear. …

(ECF No. 131 at 6-7).

Plaintiff did not object to the Court's original or supplemental instructions to the jury with respect to these two concepts, nor did he suggest any corrections or additions. Therefore, we examine the Plaintiff's challenges to the instructions for plain error. FED.R.CIV.P. 51(d).

The Court finds that neither the original instructions nor the supplemental instructions were difficult or confusing, and these instructions adequately defined the terms consistent with the instructions provided for in the Third Circuit's pattern jury instructions. *See Third Circuit Model Civil Jury Instructions* §§ 1.10, 4.6.1. Moreover, we observe that whether the Court's instructions were "confusing" is of no consequence in this case, since Plaintiff cannot

demonstrate the error, if any, was highly prejudicial or resulted in manifest injustice. *Simmons*, 947 F.2d at 1078. The jury in this case answered "Yes" in response to the interrogatory that asked "Do you find that the Plaintiff has proven by a preponderance of the evidence that Defendant Kessler placed the Plaintiff or acquiesced in his placement in a cell with inmate Stiefel on October 27, 2008?" (ECF No. 120 at no. 4). Thus, the jury found in the Plaintiff's favor on this particular element of his retaliation claim against Defendant Kessler.[6] A new trial is not warranted on this ground.

***Failure to appoint Counsel***

Plaintiff argues that the Court's failure to appoint counsel resulted in "prejudice" throughout the trial. (ECF No. 122 at 1-2). Prior to trial, the Plaintiff filed a motion requesting the appointment of counsel to represent him during the trial of the case that was denied by the Court. (Text Order Entry dated June 30, 2011). "Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak,* 294 F.3d 492, 498 (3d Cir. 2002). In order to determine whether the appointment of counsel is appropriate, a court considers several factors, including: (1) plaintiff's ability to present his own case; (2) the complexity of the legal issue; (3) the degree to which a factual investigation is needed; (4) credibility determinations; (5) expert witnesses; and (6) whether plaintiff can attain and afford counsel. *See Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).

Here, Plaintiff has failed to point to any particular prejudice that resulted due to the absence of counsel. Plaintiff demonstrated his ability to adequately litigate his case by filing the action, filing several amended complaints, filing a motion for reconsideration that resulted in the

---

[6] Plaintiff's retaliation claim against Defendant Kessler ultimately failed, however, since the jury went on to conclude that she would have made the same decision even in the absence of his protected conduct. (ECF No. 120 at No. 6).

Court vacating the dismissal of the retaliation claim against McConnell, and presenting his case at trial in a coherent and thorough manner. No expert witnesses were needed in this case, and no lengthy factual investigation was required. The claims litigated in this case, namely, the retaliation and failure to protect claims, did not present any complex legal issues leading up to and during trial. Accordingly, a new trial also is not warranted on this ground.

*Trial conditions*

Plaintiff argues that during trial, he was only served peanut butter and jelly sandwiches for three straight days, was not allowed to shower, and had to wear the same underclothes for six days. (ECF No. 122 at 1). Plaintiff claims that these conditions caused him "extreme duress" throughout the trial. (*Id.*). Plaintiff has not, however, shown how these alleged conditions impeded his ability to prepare and try his case, and the Court declines to order a new trial on these grounds.[7]

*Conduct by the Court*

Finally, Plaintiff claims that the Court's "outward displeasure" with him in front of the jury had a "negative effect" on the "minds" of the jurors. (ECF No. 122 at 1). A new trial is warranted when improper conduct by the court unfairly influenced the verdict. *Marcavage v. Bd. of Trustees of Temple University,* 400 F. Supp. 2d 801, 804 (E.D.Pa. 2005). The moving party "must meet a heavy burden to prevail on the ground of judicial misconduct." *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp. 2d 487, 522 (M.D.Pa. 2010) (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure § 2809 at 103-05). The court's comments "may not confuse or mislead the jury, or become so one-sided as to assume an

---

[7] Similarly, Plaintiff asserts that he was being "housed at the very institution he was suing[,]" *see* (ECF No. 122), but has not shown this impacted his ability to prepare and/or try his case.

13

advocate's position." *Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 327 (1985).

Having examined the trial transcript, the Court finds no conduct on the part of Judge McLaughlin that would rise to the level of prejudice required for a new trial. Judge McLaughlin was respectful throughout the proceedings, and on numerous occasions offered suggestions to Plaintiff either in the presence of the jury or at a sidebar conference in order to facilitate the presentation of his case. In addition, Judge McLaughlin instructed the jury:

> As I mentioned at the beginning of the case, the court is entirely neutral about the outcome of this case. I do not want you to think that anything I have said, any instruction I have given you, any ruling I have made on the evidence, or any statement I have made to either Mr. Willig, Mr. Curtician or you, implies that I have any position in this case at all, other than to give you fairly the law that you are required to apply, and to rule fairly and impartially on the evidence that has been submitted to you. I have absolutely no interest in how this case resolves itself, only in the procedure by which it is done. …

(ECF No. 130 at 128). This argument is meritless.

## II. ORDER

For the reasons stated above, the Court hereby orders that Plaintiff's Motion for New Trial (ECF No. 122) is DENIED.

IT IS SO ORDERED.


December 6, 2013                                s/Cathy Bissoon
                                                Cathy Bissoon
                                                United States District Judge



cc (via ECF email notification):

All counsel of record

cc (via First-Class U.S. Mail):

Steven Walter Curtician
CS-6039
SCI Houtzdale
Box 1000
Houtzdale, PA  16698-1000